UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOAI DANG, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>     Defendants. | Case No. 14-CV-00530-LHK<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO DISMISS AND MOTION TO TRANSFER VENUE** |

Plaintiff Hoai Dang ("Plaintiff"), on behalf of himself and all others similarly situated, brings a putative class action lawsuit against defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung" or "Defendants").  Before the Court are Defendants' motion to compel arbitration pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 4, *see* ECF No. 49 ("Mot."); Defendants' motion to dismiss, *see* ECF No. 51; and Plaintiff's motion to transfer venue, *see* ECF No. 53.

Having considered the submission of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendants' motion to compel arbitration.  Accordingly, the

Case No. 14-CV-00530-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
DISMISS AND MOTION TO TRANSFER VENUE

Court DENIES as moot Defendants' motion to dismiss and Plaintiff's motion to transfer venue. The case management conference set for August 19, 2015, at 2:00 p.m. is hereby VACATED.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff's individual and putative class claims arise out of the *Apple v. Samsung* litigation.[1] According to Plaintiff, Samsung has been found to have "repeatedly infringed the patents of its chief competitor, Apple." ECF No. 44, Amended Complaint ("AC") ¶ 22.  As a result, Plaintiff alleges, many Samsung devices, including Plaintiff's Samsung Galaxy SIII (the "Galaxy SIII") smartphone, "are worth significantly less than the prices the consumers paid, resulting in injury and damages to the consumers." *Id.* ¶¶ 7, 32.  For example, Plaintiff alleges that "the re-sale value for the Samsung Products has dropped dramatically due to the fact that the Products infringe patents." *Id.* ¶ 33.  Had Plaintiff known the Galaxy SIII "he purchased infringed on the patents held by Defendants' competitor, Apple," Plaintiff says "he would not have purchased the Product." *Id.* ¶ 8.

As relevant here, Plaintiff purchased his Galaxy SIII in May 2012 from a Best Buy store located at 181 Curtner Avenue in San Jose, California.  AC ¶ 7.  Plaintiff paid approximately $199, plus taxes and fees.  *Id.*

Along with his Galaxy SIII, Plaintiff received a booklet entitled in bold font "**Important Information for the Samsung SPH-L710**."[2] ECF No. 67-1, Declaration of George V. Granade ("Granade Decl.") ¶ 5; ECF No. 67-2 (the "Information Booklet").  The Information Booklet is included in the packaging that accompanies every Galaxy SIII sold in the United States.  ECF No. 50, Declaration of Paul DeCarlo ("DeCarlo Decl.") ¶ 4.  Plaintiff's smartphone was no exception.

---

[1] Specifically, Plaintiff references *Apple Inc. v. Samsung Electronics Co., Ltd. et al.*, No. 11-CV-01846-LHK (N.D. Cal.) ("*Apple I*"), and *Apple Inc. v. Samsung Electronics Co., Ltd. et al.*, No. 12-CV-00630-LHK (N.D. Cal.) ("*Apple II*").

[2] According to Samsung, "SPH-L710" is the designation for the Galaxy SIII packaged for Sprint, *see* ECF No. 70 ("Reply") at 2 n.1, which is Plaintiff's wireless provider, *see* ECF No. 67 ("Opp.") at 2 n.1.

Case No. 14-CV-00530-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO DISMISS AND MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

1   *See* Opp. at 2 (referring to "the Information Booklet that was packaged with Mr. Dang's phone").

2   The front of the box containing Plaintiff's Galaxy SIII informs consumers that it contains a

3   smartphone, various accessories, and an "Important Information Booklet."  ECF No. 67-3 (the

4   "SIII Box") at 2.  The back of the box further directs consumers to a "warranty disclaimer" in the

5   "Important Information Booklet."  *Id.* at 3.

6          On the first page of the sixty-three-page Information Booklet, consumers are directed by a

7   table of contents to the "Manufacturer's Warranty," also known as the "STANDARD LIMITED

8   WARRANTY," which begins on page fifteen.  Information Booklet at 1, 15.  The Standard

9   Limited Warranty for the Galaxy SIII is also available on Samsung's website, http://www.

10  samsung.com/us/support/downloads, for consumers to view.  DeCarlo Decl. ¶ 9.  On page

11  nineteen of the Information Booklet (also the fifth page of the Standard Limited Warranty), the

12  following heading appears in bold, underlined font: "**What is the procedure for resolving**

13  **disputes?**"  Information Booklet at 19.  What follows this heading is what the Court will refer to

14  as the "Arbitration Provision."

15         The Arbitration Provision begins with the following statement, in all capital letters:

16         ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS
          LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF
17         THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL
          AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY.

18  Information Booklet at 19.  The Arbitration Provision provides further that any such dispute "shall

19  not be combined or consolidated with a dispute involving any other person's or entity's Product or

20  claim, and specifically, without limitation of the foregoing, shall not under any circumstances

21  proceed as part of a class action."  *Id.*  The Arbitration Provision, which extends to "claims against

22  SAMSUNG's employees, representatives and affiliates if any such claim arises from the Product's

23  sale, condition or performance," is "entered pursuant to the Federal Arbitration Act."  *Id.* at 19-20.

24  "The laws of the State of Texas," the provision continues, "shall govern the interpretation of the

25  Limited Warranty and all disputes that are subject to this arbitration provision."  *Id.* at 20.

26         The Arbitration Provision also contains an express procedure by which consumers can opt

27                                        3

28

United States District Court
Northern District of California

out (the "Opt-Out Procedure").  Specifically, the Opt-Out Procedure provides, in bold font:

> **You may opt out of this dispute resolution procedure by providing notice to SAMSUNG no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product.**

Information Booklet at 20.  There are two ways for consumers to opt out of the Arbitration Provision: (1) sending an e-mail; or (2) calling a toll-free telephone number.  *Id.* at 20-21.  Either way, consumers wishing to opt out must provide their name and address, the date the Galaxy SIII was purchased, and the smartphone's model number and serial number.  *Id.* at 21.  Importantly, opting out of the Arbitration Provision is without penalty, as the Opt-Out Procedure explains in bold font: "**Opting out of this dispute resolution procedure will not affect the coverage of the Limited Warranty in any way, and you will continue to enjoy the benefits of the Limited Warranty.**"  *Id.*  Plaintiff does not allege that he opted out of the Arbitration Provision.

Plaintiff does allege that the Best Buy salesperson "did not mention, draw attention to, or make Plaintiff aware of the purported arbitration provision in the warranty booklet."  AC ¶ 7.  According to Plaintiff, he "was completely unaware of the purported arbitration provision in the warranty booklet."  *Id.*

### B.  Procedural History

On February 4, 2014, Plaintiff filed this action in federal court.  ECF No. 1 ("Compl.").  Plaintiff brought breach of warranty claims under the laws of all fifty states, as well as claims under various state consumer protection statutes.  *Id.* ¶¶ 45-88.  In support of his warranty claims, Plaintiff alleged that he "and the Nationwide Class members each formed a contract with Defendants at the time they purchased the Products."  *Id.* ¶ 46.  "As part of each contract," Plaintiff continued, "Defendants warranted that the Products were delivered free of the rightful claims of any third person of patent infringement."  *Id.* ¶ 47.

On April 30, 2014, this action was related to *Apple I*.  ECF No. 24.  This action was reassigned to the undersigned judge the following day.

On May 12, 2014, the Court granted the parties' stipulation to stay this action pending

Case No. 14-CV-00530-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO DISMISS AND MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

service in Korea on defendant Samsung Electronics Co., Ltd.  ECF No. 29.  The case was administratively closed as a result.  *Id.*  Pursuant to a subsequent stipulation approved by the Court on November 24, 2014, this action was to be "stayed until 30 days after Plaintiff files a Proof of Service showing service in Korea."  ECF No. 34.  On January 8, 2015, Plaintiff filed that proof of service.  ECF No. 36.

On February 9, 2015, Defendants filed a motion to dismiss and a motion to compel arbitration.  ECF Nos. 37, 39.  In response, Plaintiff indicated on February 23, 2015, that he would be filing an amended complaint ("AC") on or before March 2, 2015, that "will moot Defendants' Motions."  ECF No. 41 at 2.

On March 2, 2015, Plaintiff filed the AC, which alleges five causes of action: (1) breach of statutory warranty against infringement under the laws of all fifty states, AC ¶¶ 45-52; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, *id.* ¶¶ 53-57; (3) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, *id.* ¶¶ 58-65; (4) restitution and unjust enrichment under the laws of California, New Jersey, and New York, *id.* ¶¶ 66-69; and (5) declaratory and injunctive relief, *id.* ¶¶ 70-78.  In the AC, Plaintiff has deleted all references to a "contract" from the section describing his breach of warranty claims.  *See id.* ¶¶ 46-47.  "Through the sale of the Products," Plaintiff now asserts, "Defendants warranted that the Products were delivered free of the rightful claims of patent infringement by any third person."  *Id.* ¶ 47.  According to Plaintiff, "These warranties were automatically attached upon the sale of the Products," and they "arise out of state statutes and not from any written agreement and/or written promise between the parties."  *Id.*  In the section describing his claims for declaratory and injunctive relief, Plaintiff now refers to the Standard Limited Warranty as the "purported 'agreement.'"  *Id.* ¶¶ 71-72.

Due to Plaintiff's filing of the AC, the Court denied as moot Defendants' then-pending motion to dismiss and motion to compel arbitration on March 16, 2015, and March 18, 2015, respectively.  ECF Nos. 46, 48.  The Court also lifted the stay that had been in effect since May

Case No. 14-CV-00530-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO DISMISS AND MOTION TO TRANSFER VENUE

12, 2014.  ECF No. 46.

On March 19, 2015, Defendants filed the instant motion to compel arbitration.  *See* Mot. at 25.  That same day, Defendants filed a renewed motion to dismiss.  ECF No. 51.  On March 20, 2015, Plaintiff filed his motion to transfer venue.  ECF No. 53.  All three motions were set for hearing on August 6, 2015.

On April 3, 2015, Plaintiff moved to stay consideration of Defendants' motion to compel arbitration and motion to dismiss pending the Court's decision on Plaintiff's motion to transfer venue.  ECF No. 59.  The Court denied Plaintiff's stay request on April 7, 2015.  ECF No. 61.

Pursuant to the parties' stipulation, ECF No. 62, which the Court approved on April 15, 2015, ECF No. 63, Plaintiff filed his opposition to Defendants' motion to compel arbitration on May 18, 2015, *see* Opp. at 22.  Pursuant to that same stipulation, Defendants filed a reply in support of their motion to compel arbitration on June 15, 2015.  *See* Reply at 15.[3]

On August 4, 2015, and pursuant to Civil Local Rule 7-1(b), the Court vacated the motion hearings set for August 6, 2015.  ECF No. 76.

## II.      LEGAL STANDARD

The FAA applies to arbitration agreements in any contract affecting interstate commerce.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001) (quoting 9 U.S.C. § 2).  Under the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'"  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).  If all claims in litigation are subject to a valid arbitration agreement, a federal court has discretion to dismiss or stay the case.  *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2015 WL 1886882, at *8 (N.D. Cal. Apr. 24, 2015).

In deciding whether a dispute is arbitrable, a federal court must answer two questions: (1)

---

[3] The oppositions to and replies in support of the other two pending motions—Defendants' motion to dismiss and Plaintiff's motion to transfer venue—were likewise filed on May 18, 2015, and June 15, 2015, respectively.  *See* ECF Nos. 65, 66, 68, 69.

Case No. 14-CV-00530-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
DISMISS AND MOTION TO TRANSFER VENUE

1     whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that agreement to

2     arbitrate encompasses the claims at issue.  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

3     F.3d 1126, 1130 (9th Cir. 2000).  If the party seeking to compel arbitration establishes both

4     factors, the court must compel arbitration.  *Id.*  "The standard for demonstrating arbitrability is not

5     a high one; in fact, a district court has little discretion to deny an arbitration motion, since the

6     [FAA] is phrased in mandatory terms."  *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475

7     (9th Cir. 1991).

8          The party seeking to compel arbitration bears "the burden of proving the existence of an

9     agreement to arbitrate by a preponderance of the evidence."  *Knutson v. Sirius XM Radio Inc.*, 771

10    F.3d 559, 565 (9th Cir. 2014).  In deciding whether the parties agreed to arbitrate a certain matter,

11    "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'"

12    *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of*

13    *Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  At the same time, a federal court must

14    "giv[e] due regard to the federal policy in favor of arbitration by resolving ambiguities as to the

15    scope of arbitration in favor of arbitration."  *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042,

16    1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir.

17    1996)).  If a contract contains an arbitration clause, "there is a presumption of arbitrability."

18    *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

19    **III.    DISCUSSION**

20          Defendants argue that, through the Arbitration Provision contained in the Information

21    Booklet Plaintiff received with his Galaxy SIII, Plaintiff agreed (1) to arbitrate his individual

22    claims against Defendants; and (2) not to bring such claims as a class action. Mot. at 9-21, 25.

23    Defendants argue further that Plaintiff's claims fall within the scope of the Arbitration Provision

24    and that the provision is neither procedurally nor substantively unconscionable.  *Id.* at 21-25.

25          As Plaintiff does not dispute that his claims fall within the scope of the Arbitration

26    Provision or that the provision is not unconscionable, *see* Reply at 1, the only issue to decide is

27

28    Case No. 14-CV-00530-LHK
      ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
      DISMISS AND MOTION TO TRANSFER VENUE

whether the Arbitration Provision constitutes a valid agreement between the parties to arbitrate Plaintiff's individual claims, *see Chiron*, 207 F.3d at 1130.  For the reasons stated below, the Court finds that it is.

### A. Agreement to Arbitrate Individual Claims

The parties agree that although the laws of Texas govern the Standard Limited Warranty, *see* Information Booklet at 20, it is California law that governs the question of whether a valid agreement to arbitrate was formed, *see* Mot. at 10; Opp. at 5; *see also Nguyen*, 763 F.3d at 1175 ("Federal courts sitting in diversity look to the law of the forum state—here, California—when making choice of law determinations.  Under California law, the parties' choice of law will [ordinarily] govern . . . .").

Under California law, "mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565.  "Mutual assent," the Ninth Circuit has explained, "may be manifested by written or spoken words, or by conduct."  *Id.* (quoting *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999)).  In addition, "acceptance of contract terms may be implied through action or inaction."  *Id.*  Accordingly, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains."  *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991 (1972)).  In the end, a court "must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement."  *Id.* (citing *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43 (1976)).

### 1. A Valid Agreement

Defendants argue that when Plaintiff purchased his Galaxy SIII and received the Standard Limited Warranty packaged with it, the terms of the warranty immediately commenced and Plaintiff therefore agreed to the Arbitration Provision contained therein.  Mot. at 9.  This kind of "shrinkwrap agreement," according to Defendants, "is commonplace in modern consumer transactions" and "regularly enforce[d]" by courts.  *Id.*  Defendants argue further that by choosing

Case No. 14-CV-00530-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO DISMISS AND MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

not to avail himself of the Opt-Out Procedure, Plaintiff assented to the Arbitration Provision.  *Id.* at 12.

The Court agrees.  Plaintiff admits that he received the Information Booklet containing the Standard Limited Warranty and Arbitration Provision in the packaging with his Galaxy SIII.  *See* Granade Decl. ¶ 5; Opp. at 2.  Plaintiff admits further that the Standard Limited Warranty amounts to a shrinkwrap agreement, *see* Opp. at 5 (referencing "'shrinkwrap' agreements *like this one* where terms and conditions are included inside product packaging" (emphasis added)), and that "courts in this district enforce shrinkwrap agreements," *id.* at 6.  Indeed, there is no dispute that such agreements are "clearly enforceable in California."  *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 782 (9th Cir. 2006); *see also Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 989 (N.D. Cal. 2010) ("The weight of authority, . . . including in this district, is that shrinkwrap licenses are enforceable.").  Nor is there dispute that shrinkwrap agreements may extend to arbitration provisions contained therein.  *See, e.g.*, *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148-49 (7th Cir. 1997) (enforcing arbitration clause found in product packaging and subject to a thirty-day accept-or-return policy); *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1362165, at *3 (N.D. Cal. Apr. 11, 2011) (finding valid an arbitration agreement contained in terms and conditions included in the smartphone's box and available online); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103-05 (C.D. Cal. 2002) (finding valid an arbitration clause included in an agreement mailed with each customer's first billing statement).

Rather, what Plaintiff disputes is whether the Arbitration Provision was sufficiently conspicuous to put Plaintiff on inquiry notice that he would be bound by its terms.  *See* Opp. at 6-14.  It is true, as Plaintiff emphasizes, that "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."  *Windsor Mills*, 25 Cal. App. 3d at 993; *accord Knutson*, 771 F.3d at 566.

That is not the case here, however.  While Plaintiff may have been "completely unaware"

9

1   of the Arbitration Provision, AC ¶ 7, this fact is of little help to him.  It is well established under

2   California law that "a party cannot avoid the terms of a contract by failing to read them."

3   *Knutson*, 771 F.3d at 567; *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31 (2d Cir.

4   2002) (explaining that under California law "receipt of a physical document containing contract

5   terms or notice thereof is frequently deemed, in the world of paper transactions, a sufficient

6   circumstance to place the offeree on inquiry notice of those terms"); *Murphy v. DIRECTV, Inc.*,

7   No. 2:07-CV-06465-JHN, 2011 WL 3319574, at *2 (C.D. Cal. Aug. 2, 2011) (agreeing that

8   "competent adults are bound by [customer agreements], read or unread" (internal quotation marks

9   omitted)), *aff'd*, 724 F.3d 1218, 1225 n.4 (9th Cir. 2013).  In fact, the California Supreme Court

10  recently held an arbitration clause enforceable where the plaintiff had alleged he "was not given an

11  opportunity to read" the vehicle sales contract containing the clause and "had no reason to suspect

12  that hidden on the back of the contract[] was a section that prohibited [him] from being able to sue

13  the Dealership in court if [he] had a problem."  *Sanchez v. Valencia Holding Co., LLC*, — Cal. 4th

14  —, 2015 WL 4605381, at *3 (Aug. 3, 2015).

15          Furthermore, Defendants have adequately shown that the Arbitration Provision was not

16  "inconspicuous."  *Windsor Mills*, 25 Cal. App. 3d at 993.  The California Supreme Court

17  explained recently that a defendant is "under no obligation to highlight the arbitration clause of its

18  contract, nor [is] it required to specifically call that clause to [the plaintiff's] attention."  *Sanchez*,

19  2015 WL 4605381, at *7.  Nonetheless, Defendants have done so here.  As detailed above, the

20  front of Plaintiff's SIII Box informs consumers that an "Important Information Booklet" could be

21  found therein.  The back of the box, moreover, directs consumers to a "warranty disclaimer" in the

22  "Important Information Booklet."  That sixty-three-page booklet, titled in bold font **Important**

23  **Information for the Samsung SPH-L710**," directs consumers to the "Manufacturer's Warranty,"

24  labeled in all capital letters on page fifteen as the "STANDARD LIMITED WARRANTY."

25  Information Booklet at 1, 15.  On page nineteen of the Information Booklet—only the fifth page

26  of the Standard Limited Warranty—begins the Arbitration Provision beneath the following

27

28  Case No. 14-CV-00530-LHK
    ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
    DISMISS AND MOTION TO TRANSFER VENUE

10

heading in bold, underlined font: "**What is the procedure for resolving disputes?**" *Id.* at 19.

The Arbitration Provision's key language then appears in all capital letters:

> ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS
> LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF
> THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL
> AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY.

*Id.* The Opt-Out Procedure, which gives consumers thirty days to opt out of the Arbitration

Provision via email or toll-free telephone call, starts on the very next page and is printed in bold

font. *Id.* at 20-21. Had Plaintiff availed himself of the Opt-Out Procedure, there would have been

no penalty: "**Opting out of this dispute resolution procedure will not affect the coverage of the**

**Limited Warranty in any way, and you will continue to enjoy the benefits of the Limited**

**Warranty.**" *Id.* (bold in original).

Defendants have also shown that the Arbitration Provision was not "contained in a

document whose contractual nature is not obvious." *Windsor Mills*, 25 Cal. App. 3d at 993. To

the contrary, the Arbitration Provision could be found on the fifth page of the Galaxy SIII's

Standard Limited Warranty. Information Booklet at 19-21. Such express warranties are plainly

"contractual" in nature. *See, e.g.*, *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (1975) (explaining that

"express warranties . . . are basically contractual in nature"); *Daugherty v. Am. Honda Motor Co.*,

144 Cal. App. 4th 824, 830 (2006) ("A warranty is a contractual promise from the seller that the

goods conform to the promise."); *see also Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir.

2004) ("California routinely enforces limited warranties and other terms found in form

contracts.").[4]

---

[4] To the extent Plaintiff asserts post-hoc that the Information Booklet's inclusion of terms
and conditions pertaining to Sprint created "confusion" sufficient to render the Arbitration
Provision unenforceable, *see* Opp. at 12-14, the Court disagrees. The Arbitration Provision
contains no references to Sprint. To the contrary, the provision states at the beginning and in all
capital letters that it covers "ALL DISPUTES WITH *SAMSUNG*." Information Booklet at 19
(emphasis added). Moreover, consumers wishing to take advantage of the Opt-Out Procedure are
told they may do so by "**providing notice to SAMSUNG.**" *Id.* at 20 (bold in original). One way
of opting out, consumers are told further, is to email Samsung at the following address:
"**optout@sta.samsung.com**." *Id.* (bold in original).

Case No. 14-CV-00530-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
DISMISS AND MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Lastly, Plaintiff's failure to avail himself of the Opt-Out Procedure adequately establishes

2    his assent to the Arbitration Provision.  As stated earlier, California law recognizes that

3    "acceptance of contract terms may be implied through action or inaction."  *Knutson*, 771 F.3d at

4    565 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991)); *accord Silicon*

5    *Valley Self Direct, LLC v. Paychex, Inc.*, No. 5:15-CV-01055-EJD, 2015 WL 4452373, at *3

6    (N.D. Cal. July 20, 2015).  "Acceptance of an offer," moreover, "may be inferred from inaction in

7    the face of a duty to act . . . and from retention of the benefit offered."  *Golden Eagle Ins. Co. v.*

8    *Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1386 (1993) (citations omitted).  In this vein, courts

9    routinely find that a consumer has accepted the terms of an arbitration agreement by failing to take

10   advantage of a mechanism for opting out.  *See, e.g.*, *Arellano*, 2011 WL 1362165, at *4

11   (compelling arbitration where smartphone purchaser "was given 30 days to opt out of the

12   arbitration agreement"); *Bischoff*, 180 F. Supp. 2d at 1101, 1103-05 (enforcing arbitration clause

13   contained in an agreement mailed to satellite television subscribers that contained an opt-out

14   provision).  This is especially true where, as here, the choice to opt out is without penalty to the

15   consumer.  *See, e.g.*, *Arellano*, 2011 WL 1362165, at *4 (enforcing arbitration agreement where

16   smartphone purchaser, "if she had chosen to opt out, . . . would not have suffered any adverse

17   consequences").[5]

18   For these reasons, the Court finds that Plaintiff entered into a valid agreement with

19

20   [5] Plaintiff's reliance on *Knutson v. Sirius XM Radio Inc.*, which he claims "is particularly
     instructive in this regard," is unavailing.  Opp. at 10.  In *Knutson*, the plaintiff purchased a Toyota
21   pickup truck that included a ninety-day trial subscription to Sirius XM ("Sirius") satellite radio.
     771 F.3d at 561-62.  Weeks later, Sirius mailed the plaintiff a "Welcome Kit" that included a
22   customer agreement containing an arbitration provision with an opt-out window of just three days.
     *Id.* at 562.  The Ninth Circuit held the arbitration provision unenforceable because there was no
23   indication that the plaintiff had "entered into an agreement for service *with Sirius XM* when he
     purchased the vehicle."  *Id.* at 566.  As far as the plaintiff was concerned, he was "only in a
24   contractual relationship with Toyota."  *Id.*  The Ninth Circuit distinguished *Knutson* from other
     shrinkwrap agreement cases, such as this one, where "the customer specifically elected to receive
25   the service *directly* from the service provider."  *Id.* at 567.  Here, unlike in *Knutson*, the arbitration
     provision applies to disputes with the manufacturer of the product purchased (i.e., Samsung), not
26   to disputes with a third party.

27                                                   12

1   Defendants to arbitrate his individual claims arising out of the sale of his Galaxy SIII.

2       **2. Most Other Courts Agree**

3       The weight of authority supports the Court's conclusion. In four other cases, three district

4   judges in two different judicial districts enforced arbitration provisions nearly identical to the one

5   at issue here against purchasers of Samsung Galaxy smartphones. *See McNamara v. Samsung*

6   *Telecomms. Am., LLC*, No. 14 C 1676, 2014 WL 5543955 (N.D. Ill. Nov. 3, 2014) (Leinenweber,

7   J.); *Sheffer v. Samsung Telecomms. Am., LLC*, No. CV 13-3466-GW AJWX, 2014 WL 506556

8   (C.D. Cal. Jan. 30, 2014) (Wu, J.), *appeal dismissed* (Dec. 23, 2014); *Han v. Samsung Telecomms.*

9   *Am., LLC*, No. CV 13-3823-GW AJWX, 2014 WL 505999 (C.D. Cal. Jan. 30, 2014) (Wu, J.);

10   *Carwile v. Samsung Telecomms. Am., LLC*, 2013 U.S. Dist. LEXIS 185089 (C.D. Cal. July 9,

11   2013) (Carney, J.).

12       In *Sheffer*, for example, purchasers of the Samsung Galaxy S4 (the "Galaxy S4")

13   smartphone (the Galaxy SIII's successor) brought a putative class action alleging that Samsung

14   had falsely advertised the smartphone's storage capacity. 2014 WL 506556, at *1. Like

15   Plaintiff's Galaxy SIII, the Galaxy S4s in *Sheffer* were packaged with warranty booklets

16   containing a standard limited warranty, which, in turn, contained an arbitration clause substantially

17   identical to the Arbitration Provision here. *Compare id.* at *2 (quoting and explaining relevant

18   portions of the Galaxy S4 arbitration provision), *with* Information Booklet at 19-21 (Arbitration

19   Provision). Samsung moved to compel arbitration based upon the Galaxy S4's arbitration

20   provision, but the plaintiffs in *Sheffer* objected on grounds similar to those relied on by Plaintiff

21   here. To wit, the *Sheffer* plaintiffs argued that the provision was not binding "because it was not

22   identified in the Booklets' table of contents; because it was located in an 'innocuously titled'

23   section about warranties in the middle of lengthy documents; and because the clause was buried

24   inside documents whose contractual nature was not obvious to the purchaser—especially given

25   that the covers of the Booklets do not explicitly reference 'agreements' or contractual 'terms.'"

26   2014 WL 506556, at *2.

27

28   Case No. 14-CV-00530-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
DISMISS AND MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

1  The district court in *Sheffer* rejected these arguments for reasons similar to those advanced

2  by the Court here.  First, the *Sheffer* court disagreed that the arbitration provision was

3  inconspicuously "buried" in the warranty booklets because (1) the booklets "disclose[d] the

4  location of the Standard Limited Warranty in the table of contents"; (2) the "arbitration clauses

5  appear underneath a bold heading entitled, '**What is the procedure for resolving disputes?**'"; (3)

6  the plaintiffs "were given a full month to opt out of the terms at issue"; and (4) "[t]he opt-out

7  provision itself is also presented in all bold text."  *Sheffer*, 2014 WL 506556, at *3.

8  Second, the *Sheffer* court rejected the argument that "no agreement was formed merely

9  because the document containing an arbitration provision was too long."  2014 WL 506556, at *2.

10  The mere "fact that the warranty's arbitration clause is contained in a larger document or

11  collection of documents provided with a consumer good does not," the *Sheffer* court concluded,

12  "invariably render that provision unenforceable."  *Id.*; *see also Uptown Drug Co., Inc. v. CVS*

13  *Caremark Corp.*, 962 F. Supp. 2d 1172, 1182 (N.D. Cal. 2013) (upholding arbitration provision

14  "located on pages 49 and 50" of a 217-page "Provider Manual" even though the provision did "not

15  contain an express 'opt-out' clause").  In *Sheffer*, the arbitration clauses were "located on pages 35

16  to 37 of the 50-page AT&T Booklet and pages 76 to 80 of the 101-page Verizon Booklet."  2014

17  WL 506556, at *2.  Here, by contrast, the Arbitration Provision is located on pages nineteen to

18  twenty-one of Sprint's sixty-three-page Information Booklet.

19  Third, the *Sheffer* court rejected the named plaintiff's argument that "he did not actually

20  see and was not aware of the terms at issue" because "competent adults may be 'bound by such

21  documents, read or unread.'"  *Sheffer v. Samsung Telecomms. Am., LLC*, No. CV 13-3466-GW

22  AJWX, 2013 WL 7158343, at *4 (C.D. Cal. Dec. 16, 2013) (quoting *Bischoff*, 180 F. Supp. 2d at

23  1105).[6]

24

25      [6] In its order dated January 30, 2014, the district court in *Sheffer* "incorporated by
    reference" its tentative ruling dated December 16, 2013, which "extensively addressed Plaintiffs'
26  contentions that mutual assent did not exist because of the placement of the arbitration clause and
27  the inconspicuous, supposedly non-contractual nature of the Booklets."  *Sheffer*, 2014 WL

14

28

United States District Court
Northern District of California

1          Finally, the *Sheffer* court found that the plaintiffs could "not credibly dispute that the

2    Standard Limited Warranty *is* 'contractual' in nature." 2013 WL 7158343, at *4. The import of

3    this finding is twofold. First, it distinguished the case from *Windsor Mills*, which applies only

4    where, unlike here, the arbitration clause is found "in a document whose contractual nature is not

5    obvious." 25 Cal. App. 3d at 993. Second, the *Sheffer* court noted that the plaintiff smartphone

6    purchasers in the related "*Han* case actually seek to *enforce* the Standard Limited Warranty"

7    against Samsung. 2014 WL 506556, at *3. The irony was not lost on the *Sheffer* court that the

8    *Han* plaintiffs sought to enforce warranty claims against Samsung while insisting simultaneously

9    that the arbitration provisions in those warranties were unenforceable. Nor is that irony lost here.

10   Although the AC now emphasizes that Plaintiff's warranty claims "arise out of state statutes and

11   not from any written agreement and/or written promise between the parties," AC ¶ 47, the Court is

12   not blind to the fact that Plaintiff's original complaint expressly alleged that he had "formed a

13   contract with Defendants" at the time of purchase, Compl. ¶ 46; *see also id.* ¶ 47 ("*As part of each*

14   *contract*, Defendants warranted that the Products were delivered free of the rightful claims of any

15   third person of patent infringement." (emphasis added)).

16          Arbitration was also compelled in three other similar cases against Samsung. The same

17   district court judge in *Sheffer* also granted Samsung's motion to compel arbitration in the related

18   *Han* case.[7]  *See Han*, 2014 WL 505999, at *3-4 (granting motion to compel arbitration where

19   plaintiffs "received the Booklets at the time of purchase," "those Booklets unmistakably contain

20   'warranty' information," and plaintiffs "were given a full month to opt out of the terms at issue").

21   In another case arising out of the Central District of California, a different judge enforced an

22   arbitration term virtually identical to the Arbitration Provision against a putative class of

23   consumers alleging a defect in their Samsung Galaxy SII smartphones. *See Carwile*, 2013 U.S.

24

25   506556, at *2.

26          [7] A chief difference between *Han* and *Sheffer* was that the plaintiffs in *Han* asserted
     warranty claims against Samsung while the *Sheffer* plaintiffs did not. *See Han*, 2014 WL 505999,
27   at *3.

15

28   Case No. 14-CV-00530-LHK
     ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
     DISMISS AND MOTION TO TRANSFER VENUE

Dist. LEXIS 185089, at *8-13 (holding that plaintiff "remains bound by the terms of the arbitration provision" that "was contained in the Warranty, which was included in the box with [plaintiff's] phone"). In yet another case, a district court judge from the Northern District of Illinois enforced the Galaxy S4's arbitration provision, largely for the same reasons present in *Sheffer*, *Han*, *Carwile*, and the instant case. *See McNamara*, 2014 WL 5543955, at *2 (holding "that the contract between Plaintiffs and Samsung provided reasonable notice of the arbitration clause," which the plaintiffs had "a meaningful opportunity to reject").

### 3. *Norcia* is Distinguishable

The only district court to decline Samsung's request to enforce an arbitration clause substantially similar to the Arbitration Provision is *Norcia v. Samsung Telecommunications America, LLC*, No. 14-CV-00582-JD, 2014 WL 4652332 (N.D. Cal. Sept. 18, 2014). In that case, the plaintiff filed a putative class action alleging that his Galaxy S4 lacked the performance, speed, and memory storage capacity that Samsung had advertised. *Id.* at *1. Samsung moved to compel arbitration based on an arbitration clause materially identical to the Arbitration Provision, and U.S. District Judge James Donato held a three-hour bench trial on Samsung's motion. *Id.* Judge Donato ultimately denied the motion to compel arbitration, holding that the plaintiff "'did not enter into an agreement with' Samsung to arbitrate his claims" because he "'had insufficient notice' of Samsung's arbitration provision contained in its warranty." *Id.* at *8 (quoting *Nguyen*, 763 F.3d at 1180).

*Norcia*, however, is distinguishable as a matter of fact and a matter of law. As a factual matter, *Norcia* was a unique case because the plaintiff there did not actually receive a warranty booklet. The plaintiff, who "was in a hurry to get to work," claimed he "never received the warranty booklet containing the arbitration provision because the Verizon salesperson had unboxed the phone and handed the phone to Mr. Norcia without the packaging that contained the warranty booklet." *Norcia*, 2014 WL 4652332, at *1-2. Plaintiff here, by contrast, admits that he received the Information Booklet containing the Standard Limited Warranty and Arbitration

16

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Provision in the packaging with his Galaxy SIII.  *See* Granade Decl. ¶ 5; Opp. at 2.  It bears

2    mentioning that even though the plaintiff in *Norcia* "voluntarily decline[d] the box" containing the

3    warranty booklet, Judge Donato nevertheless treated the plaintiff "as if he received the box"

4    because "competent adults are bound by documents, read or unread."  2014 WL 4652332, at *5-6

5    (alterations and internal quotation marks omitted).

6            Another factual difference between *Norcia* and this case is the length of the warranty

7    booklet.  In *Norcia*, Judge Donato emphasized that the arbitration provision could be found "at

8    last, on page 76" of "a 101-page booklet."  2014 WL 4652332, at *6.  *But see Sheffer*, 2014 WL

9    506556, at *2 (enforcing substantially identical arbitration provision "located on . . . pages 76 to

10   80 of the 101-page Verizon Booklet").  Here, on the other hand, the Information Booklet is only

11   sixty-three pages long, and the Arbitration Provision begins on page nineteen.  *See* Information

12   Booklet.  The Arbitration Provision, moreover, starts on just the fifth page of the Standard Limited

13   Warranty, to which consumers are directed by the table of contents on the Information Booklet's

14   first page.  *See id.*

15           An important legal development further distinguishes *Norcia* from the instant case.  In

16   *Norcia*, Judge Donato was particularly concerned with the lack of "words alerting consumers that

17   Samsung's arbitration term was a 'contract' or 'agreement.'"  2014 WL 4652332, at *7; *see also*

18   *id.* (emphasizing that California cases distinguishing *Windsor Mills* involved documents that were

19   "called a 'contract'").  The mere fact, however, that the Arbitration Provision is labeled a

20   "provision," rather than a "contract" or an "agreement," does not render it unenforceable.  Indeed,

21   the California Supreme Court, in a case postdating *Norcia*, enforced an arbitration term titled

22   "ARBITRATION CLAUSE" that was located in a vehicle sales contract.  *Sanchez*, 2015 WL

23   4605381, at *1, *3.  The California Supreme Court did so even though, unlike here, there was no

24   procedure for the consumer to opt out of the arbitration clause.  *See id.* at *7 (explaining that the

25   defendant "does not contend in this court that Sanchez could have opted out of the arbitration

26   agreement").  Nowhere did the *Sanchez* Court suggest that the arbitration clause, which the

27

28   Case No. 14-CV-00530-LHK
     ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
     DISMISS AND MOTION TO TRANSFER VENUE

1    plaintiff argued was "hidden on the back of the contract[]," *id.* at *3, was unenforceable because it

2    lacked the words "contract" or "agreement."

3        For these reasons, the Court finds *Norcia* distinguishable from the instant case.[8]  The Court

4    therefore joins the majority of other courts that have compelled arbitration against Samsung

5    Galaxy smartphone purchasers based on arbitration terms substantially identical to the Arbitration

6    Provision here.  *See McNamara*, 2014 WL 5543955, at *2; *Sheffer*, 2014 WL 506556, at *3-4;

7    *Han*, 2014 WL 505999, at *3-4; *Carwile*, 2013 U.S. Dist. LEXIS 185089, at *8-13.

8        **B.  Putative Class Claims**

9        As indicated previously, the Arbitration Provision also provides that any disputes arising

10   out of the sale of Plaintiff's Galaxy SIII "shall not be combined or consolidated with a dispute

11   involving any other person's or entity's Product or claim, and specifically, without limitation of

12   the foregoing, shall not under any circumstances proceed as part of a class action."  Information

13   Booklet at 19.  After the U.S. Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 131

14   S. Ct. 1740 (2011), such class action waivers are enforceable in California, *see Sanchez*, 2015 WL

15   4605381, at *3, *14-15 (enforcing arbitration clause's class action waiver and explaining that,

16   after *Concepcion*, "the FAA requires enforcement of class waivers in consumer arbitration

17   agreements and preempts state law to the contrary").

18       Because the Arbitration Provision bars Plaintiff from combining or consolidating his

19   individual claims into a class action, Plaintiff's putative class claims are hereby dismissed with

20   prejudice.  *See, e.g.*, *Sheffer v. Samsung Telecomms. Am., LLC*, No. CV 13-3466-GW AJWX,

21   2014 WL 792124, at *1 (C.D. Cal. Feb. 6, 2014) ("Because the arbitration agreement calls for

22   individual arbitration of all of Plaintiff's claims in this action, Plaintiff's class-based claims are

23

24       [8] The Court notes that *Norcia* is currently on appeal to the Ninth Circuit.  *See Norcia v. Samsung Telecomms. Am., LLC*, No. 14-16994 (9th Cir. appeal filed Oct. 10, 2014).  Because

25   *Norcia* does not constitute a final judgment, the parties agree that there is no basis for Plaintiff to assert offensive non-mutual collateral estoppel.  *See* Mot. at 15 n.12; Opp. at 17.  In contrast, the

26   appeal in *Sheffer* has been dismissed.  *See Sheffer v. Samsung Telecomms. Am., LLC*, No. 14-

27   55359 (9th Cir. appeal dismissed Dec. 23, 2014).

28   Case No. 14-CV-00530-LHK
     ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
     DISMISS AND MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

1    dismissed with prejudice.").

2    **IV.    CONCLUSION**

3           For the foregoing reasons, the Court hereby GRANTS Defendants' motion to compel

4    arbitration.  Accordingly, the Court DENIES as moot Defendants' motion to dismiss and

5    Plaintiff's motion to transfer venue.  *See Langston v. 20/20 Cos., Inc.*, No. EDCV 14-1360 JGB

6    SPX, 2014 WL 5335734, at *9 (C.D. Cal. Oct. 17, 2014) (granting motion to compel arbitration

7    and denying as moot motion to transfer venue); *In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F.

8    Supp. 2d 1084, 1097 (N.D. Cal. 2012) (granting motion to compel arbitration and denying as moot

9    motion to dismiss).

10          Plaintiff's individual claims are hereby DISMISSED WITHOUT PREJUDICE so that the

11   parties may pursue arbitration.  *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir.

12   1988) (explaining that dismissal is appropriate where "the arbitration clause [is] broad enough to

13   bar all of the plaintiff's claims").  Plaintiff's putative class claims are hereby DISMISSED WITH

14   PREJUDICE.

15          The Clerk shall close the case file.

16   **IT IS SO ORDERED.**

17

18   Dated: August 10, 2015

19                                                    _____

20                                                    LUCY H. KOH
                                                      United States District Judge
21

22

23

24

25

26

27                                                19

28   Case No. 14-CV-00530-LHK
     ORDER GRANTING MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT MOTION TO
     DISMISS AND MOTION TO TRANSFER VENUE

United States District Court
Northern District of California